## UNITED STATES v. INDEPENDENT FRUIT SHIPPERS.

### No. 169.

District Court, E. D. Washington, N. D.

Feb. 27, 1941.

Lyle Keith, Dist. Atty., and Harvey Erickson, Asst. Dist. Atty., both of Spokane, Wash., for plaintiff.

J. A. Adams and Sam Sumner, both of Wenatchee, Wash., and J. Harold Anderson, of Cashmere, Wash., for defendant.

SCHWELLENBACH, District Judge.

This matter comes before the court on the motion of the defendant to dismiss the action and each of its fifteen causes of action on the ground that plaintiff's complaint does not state a claim against the defendant upon which relief can be granted. The allegations as to each cause of action are the same except as to names of mortgagors, dates and amounts. In addition to this action, there are thirteen other actions filed, the allegations of the complaints of which are identical with the allegations in this complaint. The entire fourteen cases involve ninety-four separate causes of action. In so far as defendants in the other cases have appeared and counsel participated in the argument on this motion, it is understood that the court's decision in this case will apply as to all of the other cases. In the first cause of action plaintiff alleges as follows:

That the Farm Security Administration was and is a branch or division and official federal agency of the plaintiff.

That the defendant is a Washington corporation.

That between April 12, 1937, and June 16, 1937, plaintiff advanced to E. D. Bradbury and his wife $675, for which the Bradburys executed promissory notes and a chattel mortgage on their 1937 crop which it is alleged was a first lien upon said crop.

That there still remains due and owing on the notes $274.79.

Then the complaint alleges that because the Bradburys were unable "to finance the entire production, handling and selling costs of the 1937 crop and needed addition-

al funds arrangements of some sort were effected between the said borrowers and the defendant for the financing by the defendant of the additional costs."

In paragraph IX plaintiff alleges that the precise nature and terms of the arrangement effected between defendant and the borrowers are unknown to the plaintiff but the plaintiff alleges on information that one of the terms of such arrangement was that the defendant obtain a first lien upon the borrowers' 1937 crop to secure the repayment of funds advanced by it.

In paragraph X plaintiff alleges that borrowers made request of plaintiff that it execute a subordination agreement subordinating the lien of its mortgage to the lien to be created in favor of the defendant.

In paragraph XI plaintiff alleges pursuant to such request plaintiff executed a limited subordination agreement in favor of the defendant and there is set out in the complaint as an exhibit a copy of the subordination agreement. In that agreement defendant is named as the creditor and is authorized to deduct for handling and sale of the borrowers' 1937 crop the sum of 60 cents per box from each sale made by the mortgagor until the loan made by the defendant shall have been paid in full. By the terms of the subordination agreement, the defendant's lien is limited to the 60 cents per box and the lien of the plaintiff on any sum in excess of 60 cents per box is specifically asserted.

In paragraph XII plaintiff alleges on information and belief that thereafter the defendant advanced funds and proceeded to assist the borrower and that "pursuant to the terms of the arrangements effected by the said borrowers and said defendant which at the request of said borrowers and pursuant to the arrangements hereinbefore referred to" the borrowers delivered their crop to the defendant which handled and sold it and retained all the proceeds from such sale.

Plaintiff then alleges that it has made repeated demands upon the defendant for an accounting, that it does not have within its possession the figures as to the amounts collected by the defendant. The prayer of the complaint is for an accounting and for judgment in the amount found to have been received by the defendant from the sale of such crop in excess of 60 cents per box.

Defendant contends that when plaintiff consented to the sale of mortgaged property it lost its lien and lost its right of recovery in conversion. Counsel for defendant cites many cases upholding this contention.

Plaintiff's counsel takes the position that its crop mortgage was a first prior lien which extended through and against the proceeds received from the sale of such crop. The case of United States v. Chickasha Cotton Oil Co., 10 Cir., 115 F.2d 135, relied upon by the plaintiff, is not in point. That case turned upon the lack of authority of the local representative of the Farm Security Administration to waive the crop lien which the Government had.

In passing on this point, I do not propose to bind myself as to my own decision of the case when it comes on for trial. I don't believe that this defendant or any of the other defendants or any other handlers of fruit in the Wenatchee Valley would want the court to go as far as counsel did in response to my question concerning conditional subordination agreements. If that is to be established as the law it seems to me it would present insurmountable difficulties in crop financing in the Wenatchee Valley.

However, this complaint is fatally defective. There is no allegation in it tying the defendant in with the subordination agreement. There is nothing to show that defendant knew of the subordination agreement or that it acted upon it. The reference on the bottom of page 5 concerning the arrangements effected by the borrowers and the defendant can only refer back to the allegations as to arrangements of some sort which are described in paragraphs VIII and IX. The mere fact that the subordination agreement was executed in the name of the defendant is not sufficient to tie the defendant in with it.

The complaint being thus defective, motion to dismiss must be granted. I am not suggesting what language can or should be inserted to correct this defect. For me so to do would be improper. However, I don't think it is improper for me to suggest that, in view of the fact that there are 94 different causes of action involved in the 14 cases, that the saving of "paper work" would justify my considering a motion by plaintiff to amend by interlineation if such a course is practicable.